## Commonwealth v. Naylor

222

*Frederic G. Antoun,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General, for Commonwealth.

*William A. Degillio,* for defendant.

PINOLA, J., July 3, 1958.—This is an appeal by W. E. Naylor, of Duryea, from the suspension of his privilege to inspect motor vehicles for a period of six months, for the following reasons: (1) Too many inspections the last four days of period; (2) inspecting trailers outside of garage; (3) owner signing name to inspection records when another mechanic did the work.

The case was heard by then President Judge Valentine and after his decision, on motion of counsel for appellant he granted a reargument before the court en banc.

The suspension was made pursuant to section 823 (*f*) of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §431 (*f*), which provides:

"If the secretary finds that the provisions of this act, or the directions of the secretary, are not being complied with, or that the business of such stations in connection with such inspections is being improperly conducted, he may suspend the designation of any such stations."

We agree that the testimony supports the following finding of fact:

"The testimony established that during the last four days of the inspection, viz., January 28, 29, 30 and 31, 1957, two hundred thirty-eight inspections were made at defendant's station."

We do not agree with the following finding of fact:

"It is also established that trailers were inspected outside of the garage for the reason that they did not fit in the space in the garage measuring fourteen by twenty-five feet."

There is no evidence in the record that any trailer was ever inspected outside of the garage. As a matter of fact, the garage is 110 feet by 95 feet and can accommodate 50 cars in the working space adjacent to the testing area. It is unreasonable to expect a station owner to set aside sufficient space to accommodate the largest trailer-tractor when inspections of such vehicles are only made occasionally. It is more reasonable to permit him to examine the vehicle in the remaining part of the garage, moving the testing equipment.

The permit to inspect granted by the secretary is not for the space 14 x 25. In the booklet entitled Official Inspection Station Instructions, issued by the Bureau of Highway Safety, it is stated, page 8:

"In accepting this appointment as an Official Inspection Station, the owner, operator and duly authorized employees shall make inspections and affix certificates of inspection (windshield stickers), *only within garage, at location of business designated on Certificate of Appointment. . . .*"

Therefore, the permit is for the entire garage and an inspection made in any part of the garage is proper.

Setting aside the second finding, we make the following finding of fact:

Appellant did not inspect trailers outside of the garage.

We agree with the following finding of fact:

"Mr. Naylor signed as having inspected every motor vehicle. He was, in fact, assisted by a person not certified as an inspection station mechanic."

We do not, however, agree that the signing by Mr. Naylor was improper or illegal. The assistants whom he had merely did the laborious work, taking off wheels, jacking up cars, etc. In every instance the inspection

was by Mr. Naylor. He and he alone could have signed the inspection record.

There is no legal evidence to support the following finding of fact:

"It is impossible for one qualified mechanic to adequately and properly inspect the number of motor vehicles which defendant allegedly inspected during the period of four days."

The evidence throughout indicates that Mr. Naylor did not inspect the vehicles alone. The evidence is not contradicted that he had the assistance of one mechanic, who did the laborious work. Besides, a brother saw to it that the cars that were brought in were all cars which were apparently in good condition so far as glass and other visible defects are concerned.

The secretary has published a pamphlet containing 51 pages of instructions for the operation of official inspection stations. Not a single word is to be found in this booklet concerning the number of possible inspections during any given period. Certainly, during the last 25 years some stations must have examined more cars than the secretary would consider reasonable or possible. Yet, we repeat, there is not a word concerning this matter to guide the operators of stations.

Appellant is being punished because the present secretary considers the number too many, and this in spite of the fact that there is not a single word of testimony that any one of the cars was improperly inspected.

Counsel for the Commonwealth said, at the hearing, "there is no attempt to find him (appellant) guilty as here charged except by relation." Here is an admission that appellant is being tried not for sin but for suspicion. The secretary is trying to sustain his suspension by comparisons based upon assumptions which are not supported by any evidence in this record.

The inspecting officer, Eugene Stansfield, admitted that he didn't know whether any vehicles were improperly inspected. He was then asked:

"Q. You are assuming that they weren't done right?

"A. That's right."

This inspector, who was on the job only one month and three days, never inspected a car, admitted that he was not a qualified mechanic and that he had no training in mechanics. He had no previous experience as a garage supervisor. Yet he had the temerity to tell the court: "It takes at least a half hour to do a car, a thorough inspection."

Then later, he said "most mechanics will tell you it takes from twenty minutes to thirty minutes before they check a car," i.e., a single mechanic with no assistance.

It follows that if two work on a car, it would require only from 10 to 15 minutes.

Appellant, who has been in the garage business 40 years and has held inspection privileges throughout the period of inspections, namely, 25 years, has never had his license revoked or suspended. With all his experience he has cut down time of inspection to about 10 minutes. As he said: "We figure ten minutes, two of us with the help of the driver."

The secretary bases his revocation on the fact that throughout the State only 48 percent of the cars have been found perfect, while in the case of those inspected by appellant from 80 percent to 84 percent were found to be in good condition.

The agent also testified that other stations were charging as high as $6 for an inspection, whereas most of appellant's charges were $1 or $1.50. He wants the court to assume that because the charge was so small that a complete and proper inspection was not made. There is no evidence to warrant such a conclusion.

Appellant did no actual repair work during the last four days, confining his efforts to inspections. The garage was open and he inspected cars until midnight. It was not only possible to inspect the number of cars during that period according to the time required as given by appellant, but it was also possible according to the time required, namely, 20 minutes, as given by Officer Stansfield.

The court would have had corroborative evidence of appellant's contention if he had admitted in evidence the record of another station which showed 52 examinations made in one day. This was accidentally left in appellant's premises by Mr. Stansfield. In all fairness, counsel for the Commonwealth should never have objected to the introduction of one of its own records. That record was improperly excluded. The fact that another station performed 52 inspections in one day should have been received in evidence to show that it was possible for appellant to make that same number of inspections.

From all the evidence, we make the following finding of fact:

Appellant did not make too many inspections the last four days of the period.

### Conclusion

In suspending such a privilege the secretary is performing his administrative function. It must, however, be exercised according to his best judgment. The discretion conferred upon him cannot be arbitrarily or capriciously exercised. In our opinion, the testimony produced on this appeal shows a definite, but perhaps unintentional, abuse of discretion.

Based on our findings of fact, we make the following

### Order

Now, July 3, 1958, at 10:30 a.m., appellant is not subject to a suspension of his inspection station privileges.